United States District Court
Southern District of Texas
**ENTERED**
September 12, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROGER CONNELL and RICHARD ASHCROFT On behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-15-2841 |
| VS. | § § | |
| WELLS FARGO & COMPANY, *et al.* | § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

Former financial advisors of Wells Fargo Advisors, LLC filed this suit as a putative class action, asserting diversity of citizenship as the basis for federal jurisdiction. The named plaintiffs, Roger Connell and Richard Ashcroft, contend that the forfeiture provision in Wells Fargo's Performance Award Contribution Plan is a covenant not to compete that violates Texas public policy. Connell and Ashcroft argue that as a result, Texas law applies to make the forfeiture provision unenforceable, overriding the parties' contractual choice of North Carolina law in the Plan agreement. Wells Fargo has moved to dismiss the complaint based on a recent Texas Supreme Court decision enforcing a New York choice-of-law clause that accompanied a similar forfeiture provision. Wells Fargo argues that as a matter of both Texas and North Carolina law, the forfeiture provision is enforceable and that the complaint fails to state a claim upon which relief may be granted.

Based on a review of the pleadings, the record, and the applicable law, the court grants Wells Fargo's motion to dismiss, finding that the parties' choice of North Carolina law governs and that

the forfeiture provision is valid and enforceable.   The dismissal is with prejudice because amendment would be futile.

The reasons for these rulings are explained in detail below.

## I.    Background: The Complaint Allegations

Roger Connell and Richard Ashcroft each worked at Wells Fargo or a subsidiary's predecessor-in-interest for over 20 years.[1]  (Docket Entry No. 29 ¶¶ 3–7).  Connell resigned from Wells Fargo in March 2014 and now works at Cornerstone Financial Network; Ashcroft resigned in July 2013 and is employed at Baird Retirement Management.  *Id.*  Wells Fargo views both Cornerstone and Baird as competitors in the financial services industry.  *See id.* ¶ 33.

During the time they worked at Wells Fargo, Connell and Ashcroft were eligible and were designated for participation in a "Performance Award Contribution Plan."[2] *Id.* ¶¶ 13–14.  The Plan's stated purpose[3] was to provide "a select group of individuals in the employ of one or more participating employers with an opportunity to earn additional incentive-based compensation

---

[1]  Wells Fargo & Company is a Delaware corporation, headquartered in San Francisco, California. Its wholly owned subsidiaries include Wells Fargo Advisors, LLC and its predecessors-in-interest.  Wells Fargo & Company acquired Wachovia Securities, LLC in December 2008 and made it a subsidiary of Wells Fargo Advisors Network, LLC under the name Wells Fargo Advisors, LLC.  Before the acquisition, Wachovia had acquired the brokerage firm A.G. Edwards.  Both Connell and Ashcroft worked at A.G. Edwards before and during its acquisition by Wachovia, and then at Wachovia during its acquisition by Wells Fargo.  (*See* Docket Entry No. 29 ¶¶ 3–7).

[2]  Connell and Ashcroft allege that they also participated in deferred compensation plans at Wells Fargo's predecessors, Edwards and Wachovia. (Docket Entry No. 29 ¶ 12).  They allege that the predecessor plans "contained forfeiture provisions similar to those included" in Wells Fargo's Plan and refer to all these plans collectively as "the Plan." (*Id.* ¶ 30).

[3]  Connell and Ashcroft allege on information and belief allege that the 2011 version of the Plan applies to them.  (Docket Entry No. 29 ¶ 13).  Wells Fargo states that the 2012 Plan is the operative version and that the complaint refers to a 2011 "Plan Summary and Prospectus" issued before the 2012 Plan document.  (Docket Entry No. 35 at 9 n.2).  The court cites to the 2012 Plan but notes that on the relevant issues, the 2012 Plan document does not differ materially from the 2011 Plan document Connell and Ashcroft refer to and rely on.

contingent upon their attainment of pre-established performance objectives and their completion of designated service periods." (Docket Entry No. 35, Ex. 2 § 1.01). The Plan provided a "Performance Award" that seeks "to assure the continued service of the Participant and to encourage such individual to contribute to the long-term growth and financial success of the Company and his or her Participating Employer." A "Special Award" served as "a special retention incentive to motivate Eligible Employees to remain with the Company or any Participating Employer until Retirement." (*Id*. §§ 5.02–03). The Plan administrator had discretion to set performance benchmarks and special payments for continued service. The administrator also designated the awards vesting schedule, paying them out as they accrued either in annual installments or all at once, known as cliff vesting. The awards accrued when the employee had finished working during the period the award covered. *Id.*

The Plan included a forfeiture clause that applied when the employee elected to leave. It stated that "[u]pon a Participant's cessation of Employee status for any reason" other than retirement or involuntary dismissal, all performance and special award balances that were "not at that time vested . . . shall be immediately forfeited, and the Participant shall cease to have any further right or interest in those forfeited balances." *Id*. § 5.05. If a participating employee resigned to "retire," the Plan allowed the employee to retain the performance and special award balances unless the employee became "associated" with any entity "that is actively engaged in the financial services business" within three years of his voluntary resignation.[4] *Id*. § 3.24. A "retiring" participant had to execute a "Client Transition Agreement," which transferred client accounts to other financial-

---

[4] The retirement clause permits a former employee to associate with other financial services firms before the three years are up if all performance and special awards have already vested. (Docket Entry No. 35, Ex. 2 § 3.24(B)(i)).

3

service employees working for the same employer.  An employee who voluntarily retired could choose between continuing to receive the accrued awards or going to work for a competitor.  *Id.* §§ 3.24, 3.05.

Connell and Ashcroft allege that the Client Transition Agreements contain nonsolicitation and noncompetition provisions that violate Texas public policy and make the forfeiture provisions unenforceable under Texas law.  (Docket Entry No. 29 ¶ 23).  Section 8.04 of the Plan designated North Carolina law to govern the construction and administration of rights under the Plan.  (Docket Entry No. 35, Ex. 2 § 8.04).  As discussed below, under North Carolina law, the forfeiture provision is valid and enforceable.

When Connell and Ashcroft resigned from Wells Fargo and began working for other financial services firms, Wells Fargo forfeited their award accounts.  (Docket Entry No. 29 ¶ 33).  Connell alleged that the market value of his forfeited amount was approximately $180,000 in unvested awards.  Ashcroft alleged that the value of his forfeited award amount was approximately $600,000.  (*Id.*).  Both allege on information and belief that over 100 other Wells Fargo financial advisors in Texas have had their award accounts forfeited in a similar manner, for a total estimated forfeiture of $5 million.  (*Id.* ¶ 32).  Connell and Ashcroft sued for themselves and for other similarly situated Texas financial advisors, seeking a declaratory judgment that the Wells Fargo Plan forfeiture provisions are an unreasonable restraint of trade under the Texas Business & Commerce Code § 15.05 and an unenforceable covenant not to compete under § 15.50.  Connell and Ashcroft also sought damages for breach of contract, for wrongful withholding and conversion of their compensation, and for unjust enrichment.  (Docket No. 29).

4

In its motion to dismiss, Wells Fargo argues that North Carolina law governs the Plan and allows forfeiture under the terms and conditions specified in the Plan documents to which the parties agreed. Connell and Ashcroft respond that Texas has made a fundamental policy choice against restrictions on competition and solicitation and that this policy overrides and makes unenforceable the parties' contractual choice-of-law provision.

Each argument, and the response, is considered below.

## II.     The Legal Standards for Motions to Dismiss and for Determining the Law that Applies

Rule 12(b)(6) allows dismissal if a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b) (6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), the United States Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's

motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The court may consider such extrinsic materials as matters of public record without converting the motion into one seeking summary judgment. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT& MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). A plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F.Appx. 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

"In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, here Texas." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020 (1941)). Texas courts typically enforce contractual choice-of-law provisions. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004); *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197

6

F.3d 694, 705 (5th Cir. 1999); *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F.Supp.2d 948, 951 (S.D. Tex. 2011).

Texas has adopted § 187 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. Texas law enforces a contractual choice-of-law provision if the issue raised is "one which the parties could have resolved by an explicit provision in their agreement." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990). Even if the issue could not have been resolved with a provision in the agreement, Texas courts will enforce choice-of-law provisions if the chosen state's law has a reasonable relationship with the parties and is not contrary to a forum's fundamental policy. *Caton*, 896 F.2d at 943; *DeSantis*, 793 S.W.2d at 678; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187.

## III.    Analysis

### A.    Which State's Law Governs the Forfeiture Provision?

The parties dispute whether the Wells Fargo Plan forfeiture clause offends a fundamental Texas policy disfavoring restraints on trade, including noncompetition covenants. The Texas Supreme Court recently considered a substantially similar case. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319 (Tex. 2014), involved an employee who worked for ExxonMobil as a geologist for over 30 years. He participated in "Incentive Programs" that awarded him restricted stock. The award would vest into unrestricted stock on an extended schedule: 50 percent of the stock vested 3 years after the initial grant, and the remaining 50 percent vested 7 years after the initial grant. *Id.* at 322. Each time Drennen received a restricted stock grant, he signed an agreement adopting the terms of the incentive program. Those terms included a forfeiture provision permitting ExxonMobil to terminate unvested stock awards if Drennen engaged in "detrimental activity"—including

competing "with the Corporation or an affiliate"—and a choice-of-law provision designating New York law to govern the parties' agreement.[5] *Id.*

Drennen retired in 2007. Nearly 17,000 shares of his awarded stock had vested and been cashed out in various funds and other stock options. About 57,000 shares remained unvested and restricted. Later that year, Drennen accepted a position at Hess Corporation, an ExxonMobil competitor. ExxonMobil canceled the 57,000 outstanding restricted shares under the incentive plan's forfeiture provision. *Id.* at 323. Drennen sued to recover the restricted stock and for a declaratory judgment that ExxonMobil's incentive program functioned as an unenforceable covenant not to compete. ExxonMobil responded that New York law governed and that the forfeiture provision was enforceable under the laws of New York.

The *Drennen* Court first considered whether the parties or the transaction provided a reasonable basis for selecting New York law under § 187(2)(a) of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. The Court noted that the RESTATEMENT "reasonable basis" standard was not difficult to meet. "Even when a relationship is not substantial, the parties may be held to the chosen state's law when they had a reasonable basis for their choice, such as choosing law they know well or that is well developed." *Drennen*, 452 S.W.3d at 325. The fact that "ExxonMobil's outside [legal] counsel is a New York law firm" was relevant to deciding whether there was a reasonable basis for selecting New York law. *Id.* at 324.

Wells Fargo's Plan administrator resides in North Carolina, the Plan's choice-of-law jurisdiction. (Docket Entry No. 35, Ex. 2). Like ExxonMobil, Wells Fargo and the Plan participants

---

[5] Like Wells Fargo, ExxonMobil was neither incorporated nor headquartered in the chosen state forum. *Drennen*, 452 S.W.3d at 322 (ExxonMobil is headquartered in Texas and incorporated in New Jersey).

have an interest in seeing the law consistently applied across the many multistate incentive agreements.  *See Drennen*, 452 S.W.3d at 325.[6]

    The *Drennen* Court analyzed § 187(2)(b) of the RESTATEMENT to decide whether applying New York law would violate a Texas fundamental policy.[7]  The Court found "a difference, although a narrow one, between an employer's desire to protect an investment and an employer's desire to reward loyalty.  Non-competes protect the investment an employer has made in an employee, ensuring that the costs incurred to develop human capital are protected against competitors. . . . Forfeiture provisions conditioned on loyalty, however, do not restrict or prohibit the employees' future employment opportunities.  Instead, they reward employees for continued employment and loyalty." *Drennen*, 452 S.W.3d at 327–28.  The Court explained the difference in the after-the-fact remedy as well as the before-the-fact purpose.  "Under a non-compete, the former employer can bring a breach of contract suit to enforce the clause.  But under a forfeiture provision, the former employer does not need to take legal action because the profit-sharing plan belongs to the employer." *Id*. at 328.  Another critical difference was that loyalty bonuses subject to forfeiture "do not restrict the employee's right to future employment; rather, these plans force the employee to

---

    [6]  Connell and Ashcroft do not argue that there is no reasonable basis for choosing North Carolina law.  Instead, they direct their arguments to whether applying North Carolina law violates a fundamental Texas policy under § 187(2)(b) of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS.  (*See* Docket Entry No. 37).

    [7]  The question of fundamental policy is the third of three steps under § 187(2)(b), with the first two steps inquiring "whether Texas has a more significant relationship to these parties and their transaction than" the law of another forum, and "whether Texas has a materially greater interest than [the other forum] in deciding the enforceability of the noncompetition agreement in this case." *DeSantis*, 793 S.W.2d at 678. All three steps must be decided in favor of applying Texas law before a choice-of-law provision can be overridden.  *See id.*  For purposes of this motion only, Wells Fargo concedes that the first two steps favor applying Texas law.  (Docket Entry No. 35 at 25).

choose between competing with the former employer without restraint from the former employer and accepting benefits of the retirement plan to which the employee contributed nothing." *Id.* at 329.

Connell and Ashcroft contend that Wells Fargo's Plan is distinguishable from the ExxonMobil program at issue in *Drennen*. The Wells Fargo Plan allegedly requires retiring participants to sign an antisolicitation and noncompete agreement for their awards to vest.[8]  (*See* Docket Entry No. 37 at 4–9).  Connell and Ashcroft argue that this requirement is an invalid and unenforceable condition precedent to vesting their awarded stock.  They cite *Nacogdoches Heart Clinic, P.A. v. Pokala*, 2013 WL 451810 (Tex. App. Tyler Feb. 6, 2013), for the proposition that an invalid noncompete cannot prevent deferred compensation from vesting.  But *Pokala* involved the *divestiture* of already vested stock.  Unlike ExxonMobil in *Drennen* and Wells Fargo in this action, the defendant in *Pokala* had to sue the former employee for an order enforcing the parties' contractual covenant not to compete and to obtain a declaratory judgment that the employee's already vested stock was subject to an enforceable buy-back agreement.  *Id.*  Like the ExxonMobil

---

[8] The complaint does not state whether Connell and Ashcroft signed the Client Transition Agreement required by the Plan's retirement clause, nor does it state  the type of enforcement contemplated by the alleged anti-solicitation and non-compete clauses in the Agreement.  A copy of the agreement is not  before the court.  In their response to Wells Fargo's motion to dismiss, Connell and Ashcroft argue that "the condition precedent preventing [their] deferred compensation from further vesting was their failure to sign a non-compete agreement" contained in the Plan's Client Transition Agreement (Docket Entry No. 37 at 14).  In *Drennen*, however, the record showed that the plaintiff former employee *did* periodically sign an agreement that incorporated a term that Drennen would not "engage[] in detrimental activity" defined largely at the discretion of the ExxonMobil administrator and including employment "by any entity that . . . competes with the Corporation." *Drennen*, 452 S.W.3d at 322.  The Court held that "Drennen did not promise to refrain from competing with ExxonMobil or refrain from soliciting clients or employees from ExxonMobil," since the only means of enforcing the noncompete was to forfeit his unvested stock.  *Id.* at 329.  Connell and Ashcroft have not alleged that Wells Fargo seeks to enforce the parties' contractual noncompete through any other means than forfeiture of unvested awards.

program in *Drennen*, the Wells Fargo Plan contemplates forfeiture as the only remedy for post-employment competition.  And Wells Fargo did not need to take legal action to effect the forfeiture, because the forfeited funds were unvested awards that under the Plan "belongs to the employer." *Drennen*, 452 S.W.3d at 328.  Although the Wells Fargo Plan, like the ExxonMobil program, defines loyalty in part by prohibiting associations with other firms in the same industry, the Plan limits that prohibition clause to the *earlier* of 1) three years or 2) the final vesting of awarded compensation. After the loyalty incentives are paid, the restrictions on competition lapse.  The forfeiture provision does not become a divestiture or effect a divestiture.  (Docket Entry No. 35, Ex. 2 § 3.24(B)(i)).  The Wells Fargo Plan provides Connell and Ashcroft the same permissible choice that Drennen had: to preserve their rights to the unvested loyalty award compensation or to work for a competitor without restraint.

In *Drennen*, the Texas Supreme Court held  that a forfeiture of unvested compensation "is not a covenant not to compete" and enforced the parties' choice of New York law, finding no violation of a fundamental Texas forum policy.  *Drennen*, 452 S.W.3d at 329.  In stating the holding, the Court noted that "[w]hether [forfeiture] provisions in non-contributory employee incentive programs are unreasonable restraints of trade under Texas law, such that they are unenforceable, is a separate question and one which we reserve for another day."  *Id.*  Based on this statement, Connell and Ashcroft argue that the proper *Erie* guess about this type of forfeiture provision is that the Texas Supreme Court would find it an unenforceable restraint of trade and a violation of fundamental Texas policy.  (Docket Entry No. 37 at 12–19).  But the Court's statement explicitly forecloses this inquiry for a plan's forfeiture provision, at least for one that shares so many

11

characteristics with the *Drennen* plan.  By holding that Drennen's forfeiture arrangements do not require a court to override a choice-of-law provision, the Texas Court has ruled that these provisions do not violate the state's fundamental policy even if they may not be ultimately enforceable in Texas.

The issue here is not the predictable fate of these provisions under Texas law, but whether Texas law should apply at all.  The parties chose North Carolina law in their Plan agreement.  The record presents a reasonable basis for that selection.  The Plan administrator lives in North Carolina and the parties have an interest in seeing the law consistently applied to their agreements under the Plan.  Under *Drennen*, the contested forfeiture provision in the Plan does not violate a fundamental policy of Texas so as to require overriding the parties' choice-of-law provision.  The law of North Carolina applies.

**B.     Does the Complaint State a Claim under North Carolina Law?**

Under North Carolina law, "a restriction in the contract which does not preclude the employee from engaging in competitive activity, but simply provides for the loss of rights or privileges if he does so, is not in restraint of trade."  *Hudson v. N. Carolina Farm Bureau Mut. Ins. Co., Inc.*, 209 S.E.2d 416, 418 (N.C. App. 1974); *see also Newman v. Raleigh Internal Medicine Associates, P.A.*, 362 S.E.2d 623 (N.C. App. 1987).  *Hudson* found valid a retirement pension plan forfeiture provision that applied to unvested retirement benefits after the retiree began competing with his former employer.  The North Carolina court reached that result even though the forfeiture clause's prohibition on competition was "unrestricted in time or territory."  *Hudson*, 209 S.E.2d at 418.  The North Carolina state court of appeals has extended the reasoning of *Hudson* and *Newman*

to permit former employers to recover liquidated damages for the violation of noncompetition agreements, since these terms "do[] not *preclude* the employee from engaging in competitive activity" but merely impose a financial loss for doing so, much like a forfeiture. *Eastern Carolina Internal Medicine, P.A. v. Faidas*, 564 S.E.2d 53, 55 (N.C. App. 2002) (quoting *Hudson*, 209 S.E.2d at 418) (emphasis original).

Connell and Ashcroft offer no authority for their argument that North Carolina protects unvested compensation from forfeiture if a former employee competes with a former employer. Indeed, their argument that Texas law applies assumes that North Carolina law makes the forfeiture provision enforceable; otherwise, applying North Carolina law would not allow them to argue that the result would offend Texas public policy. (*See, e.g.*, Docket Entry No. 37 at 8, 12). Under North Carolina law, the Wells Fargo Plan forfeiture provisions are not just reasonable restraints of trade; they are not restraints of trade at all. The complaint fails to state a basis for relief as a matter of law.

## IV.   Conclusion

Wells Fargo's motion to dismiss, (Docket Entry No. 35), is granted. The complaint allegations fail to state a claim as a matter of law because Texas does not treat the forfeiture arrangements at issue as a violation of fundamental state policy and because North Carolina enforces the arrangements. The action is dismissed with prejudice because amendment would be futile.

Final judgment is entered by separate order.

SIGNED on September 12, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

13